UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DIVONE ANTOINE RICE,

                Plaintiff,

v.

J. ICE et al.,

                Defendants.

_____/

Case No. 1:25-cv-1615

Honorable Jane M. Beckering

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint[1] for failure to state a claim.

---

[1] Plaintiff's complaint was filed on December 1, 2025. (*See* Compl., ECF No. 1). This Court issued an Order to File Amended Complaint on December 8, 2025, directing Plaintiff to comply with W.D. Mich. LCivR 5.6(a). (Order, ECF No. 4). Plaintiff complied with this Order by filing his amended complaint on December 26, 2025. (*See* Am. Compl., ECF No. 8). Plaintiff's amended complaint is the operative complaint in this action.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. In this action, Plaintiff sues IBC General Office Assistant J. Ice and Unknown Part(y)(ies) named as IBC Mailroom Staff. (Am. Compl., ECF No. 8, PageID.37.)

Plaintiff's claims arise from events surrounding his litigation of a § 1983 action that Plaintiff previously filed in this Court. (*See generally* Am. Compl., ECF No. 8). In the present matter, Plaintiff alleges that on March 30, 2024, he "sent a letter to the Clerk of the Court for the U.S. District Court Western District of Michigan requesting a copy of the docket entry sheet for civil case 1:22-cv-00462-JMB-PJG."[2] (*Id*., PageID.39.) Plaintiff received a copy of the docket entry sheet on April 2, 2024, and "much to his surprise . . . [he] noticed that the docket sheet depicted a Motion for Summary Judgment . . . [and] a Brief in Support of Motion for Summary Judgment . . . with certificate of service and compliance." (*Id*.) Plaintiff's complaint alleges that the docket sheet indicated that both of these documents were filed with the Court on February 20, 2024, but "he [did] not receive[] a copy of the Motion for Summary Judgment alleged to have been mailed to him well over a month since being recorded on the record."[3] (*Id*.)

Plaintiff alleges that he "raised his concern of IBC mailroom staff interfering with his access to the court . . . with [non-party staff] ARUS Geison when he made his legal mail rounds."

---

[2] In this Opinion, the Court corrects the punctuation, capitalization, and abbreviations in quotations from Plaintiff's filings.

[3] Although not specifically alleged by Plaintiff, the mail at issue was likely mailed by the Michigan Department of Attorney General, who represented the defendants in Plaintiff's previous civil rights case before this Court. *See Rice v. Unknown Bryce et al*., No. 1:22-cv-462 (W.D. Mich.).

(*Id*.) Plaintiff alleges that he asked non-party Geison what he should do about "not receiving [his] legal mail because IBC mailroom staff never delivered [his] legal mail . . . and made [him] miss a deadline." (*Id.*) Non-party Geison responded, "'Only thing [Plaintiff] c[ould] do is write a grievance on IBC mailroom staff.'" (*Id.*) Plaintiff also claims that non-party Geison informed Plaintiff that Defendant Ice was the General Office Assistant for mailroom personnel. (*Id.*)

Plaintiff's complaint further alleges several issues with his grievances and the responses he received. (*See id*., PageID.39–40.) Plaintiff claims he filed a "Step I grievance on IBC Mailroom Staff on April 2, 2024." (*Id*., PageID.39.) On April 12, 2024, Plaintiff "received the legal mail at matter." (*Id*., PageID.40.) When Plaintiff received his legal mail, he asked non-party Corrections Officer (CO) Smith "why it had taken almost two months to finally receive his legal mail," and CO Smith responded, "Stop filing grievances and lawsuits, then MDOC will get you your legal mail on time." (*Id*.) Plaintiff alleges that on April 24, 2024, he "received a [grievance] response from Defendant J. Ice . . . concerning the legal mail violations." (*Id*.) In the grievance response, Defendant Ice stated: "The legal mail in question was sent to the Control Center, given to [Plaintiff], and a signed receipt by the officer and inmate was returned to the mailroom." (*Id*.) Plaintiff claims this grievance response was "in violation of [the MDOC's] Grievance Policy Directive." (*Id*.) After Plaintiff submitted a Step II Grievance Appeal, he received a response from non-party IBC Warden McCauley on September 10, 2024. (*Id*.) Plaintiff claims that the Warden's grievance response was issued on August 12, 2024, but Plaintiff did not receive it for a month. (*See id*.) Warden McCauley's grievance response stated: "A review of records supports [Plaintiff's] contentions that the mail was not processed in a timely manner. This matter was reviewed and addressed with appropriate staff." (*Id*.)

On an unspecified date, Plaintiff claims he "wrote a letter to the U.S. District Court Clerk requesting for the clerks to document that [Plaintiff] never received any motions that were logged in the record as being sent to him by the defendants . . . and that IBC Administration is actively interfering with his legal mail." (*Id*.) Plaintiff then states that "Defendants J. Ice and IBC Mailroom Staff's practice of not delivering legal mail in a timely manner . . . [i]s a retaliatory means to sabotage prisoners' . . . ability to effectively petition the courts against the MDOC." (*Id*.) Plaintiff claims that "many other prisoners are faced with the same type of retaliatory mail violations practiced by MDOC personnel." (*Id*., PageID.41.) Plaintiff lists the following practices of the MDOC's personnel: "Not allowing / refusing attorneys . . . to leave with them, through staff, any copies of the prisoners' appeal paperwork, contrary to MDOC policy," "re-routing legal mail through the regular mail process . . . [which] allow[s] mailroom staff . . . to open, read, and copy the legal mail," and "refusing to deliver mail from verified attorneys or law firms and district courts." (*Id*.) Plaintiff concludes that these "practice[s] ha[ve] caused him harm and injury by Defendants J. Ice and co-worker[s] IBC Mailroom Staff in diminishing his ability to receive notice and file a proper response to the Motion for Summary Judgment filed by the MDOC defendants in [Plaintiff's prior civil rights case], which constructively denied [Plaintiff] his right to access the courts." (*Id*.)

Based on the foregoing allegations, Plaintiff avers that his First Amendment rights to receive mail and be free from retaliation were violated, as well as his First and Fourteenth Amendment rights to access the courts. (*Id*.) The Court also construes Plaintiff's complaint to raise Fourteenth Amendment due process violations regarding his use of the grievance system and § 1983 claims regarding the violation of prison policy. Plaintiff seeks injunctive relief and monetary damages. (*Id*., PageID.42.)

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Unknown Part(y)(ies) named as IBC Mailroom Staff

Plaintiff names the entire IBC Mailroom Staff as a Defendant. (Am. Compl., ECF No. 8, PageID.37.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Here, Plaintiff refers to "IBC Mailroom Staff" and "MDOC personnel" throughout his complaint. (*See* Am. Compl., ECF No. 8, PageID.39–41.) However, "[s]ummary reference to a single, five-headed 'Defendants' [or officers] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Plaintiff's references to "IBC Mailroom Staff" and "MDOC personnel" are insufficient to show that any individuals were personally involved in the alleged violations of Plaintiff's constitutional rights. And, Plaintiff's claims against Defendant Unknown Part(y)(ies) named as IBC Mailroom Staff fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for these reasons, Plaintiff's complaint against Defendant Unknown Part(y)(ies) named as IBC Mailroom Staff is subject to dismissal for failure to state a claim.

### B.    Non-Parties Referenced in the Complaint

In Plaintiff's complaint, he describes the actions of several non-parties at IBC. (*See generally* Am. Compl., ECF No. 8). Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the non-party individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

### C.    First Amendment Claims

#### 1.    Retaliation Claims

Plaintiff alleges in a conclusory manner that "Defendants J. Ice and IBC Mailroom Staff's practice of not delivering legal mail in a timely manner . . .[i]s a retaliatory means to sabotage prisoners' . . . ability to effectively petition the Courts against the MDOC." (Am. Compl., ECF No. 8, PageID.40.) Plaintiff was engaged in civil rights litigation at the time of the alleged violations. (*Id.*, PageID.39.) Plaintiff also claims that "many other prisoners are faced with the same type of retaliatory mail violations practiced by MDOC personnel." (*Id.*, PageID.41.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was

7

engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's civil rights litigation was protected conduct and satisfies the first element of his First Amendment claim. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

Here, Plaintiff's retaliation claim is entirely conclusory. Plaintiff claims that he did not receive his legal mail, but he does not attribute that action to Defendant Ice, let alone any specific individual. Plaintiff alleges that Defendants have a "*practice* of not delivering legal mail in a timely manner" (Am. Compl., ECF No. 8, PageID.40 (emphasis added)), but Plaintiff does not allege any facts to show that Defendant Ice or any individual personally delayed the delivery of his legal mail. (*See generally id.*) The extent of Plaintiff's allegations regarding Defendant Ice's actions are that

Plaintiff was informed by a non-party that Defendant Ice was the General Office Assistant for mailroom personnel (*id*., PageID.39), and that Defendant Ice responded to Plaintiff's Step 1 grievance. (*Id*., PageID.40.) Plaintiff merely claims the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendant Ice was motivated by any protected conduct.[4] Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, because Plaintiff's retaliation claims are entirely conclusory, Plaintiff's First Amendment retaliation claims will be dismissed.

### 2.    Interference with Legal Mail

Plaintiff's complaint avers that Defendants' actions constitute a "First Amendment violation of [Plaintiff's] right to receive incoming legal mail without interference." (Am. Compl., ECF No. 8, PageID.41.) As an initial matter, Plaintiff does not claim that Defendant Ice personally withheld the mail, but that "Defendants J. Ice and IBC mailroom staff's practice of not delivering legal mail in a timely manner . . . sabotages prisoners' . . . ability to effectively petition the courts

---

[4] Plaintiff attributes CO Smith with the statement, "Stop filing grievances and lawsuits, then MDOC will get you your legal mail on time." (Am. Compl., ECF No. 8, PageID.40.) However, CO Smith is not a party to this action, and his statements are not attributable to the named Defendants.

against the MDOC." (*Id.*, PageID.40.) Plaintiff alleges he did not timely receive the motion for summary judgment filed by the defendants in his previous civil matter. (*Id.*, PageID.39.) Although Plaintiff alleges general "practices" of not delivering legal mail in a timely manner (*id.*, PageID.40) and handling legal mail as regular mail (*id.*, PageID.41), his complaint pleads one instance of mail interference. (*See generally id.*) And, Plaintiff does not provide any facts to support his assertion about general "practices" regarding mail delivery. (*See generally id.*)

Legal mail is entitled to special protections under the First Amendment. The Michigan Department of Corrections (MDOC) has adopted policy directives that apply to incoming legal mail that correspond to the constitutional protections identified by the courts. MDOC Policy Directive 05.03.118 (eff. Feb. 9, 2026). Although not all federal courts consider mail from courts to be "legal mail," *see, e.g., Martin v. Brewer*, 830 F.2d 76, 78–79 (7th Cir. 1987); *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended,* 135 F.3d 1318 (9th Cir. 1998), the Sixth Circuit does, *see Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003), and that is reflected in the MDOC policy directive. Further, mail from the Michigan Department of Attorney General is also considered legal mail under Sixth Circuit jurisprudence. *See Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994).

However, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson,* No. 98-3866, 2000 WL 1175519 at *2 (6th Cir. Aug. 11, 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise

10

to the level of a First Amendment violation); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife. Such a random and isolated incident is insufficient to establish a constitutional violation.").

Here, Plaintiff's mail was likely mailed by the Michigan Department of the Attorney General as service of their motion and brief and would be considered legal mail. *See Muhammad*, 35 F.3d at 1081. Although Plaintiff states in a conclusory manner that there is a practice of withholding or delaying legal mail, he pleads only one occurrence in his complaint and he fails to allege any facts to show that Defendant Ice was personally involved in this one occurrence. Further, the only fact-specific allegations of improper motive are statements attributed to a non-party, (Am. Compl., ECF No. 8, PageID.40), and are therefore insufficient to show an improper motive by Defendant. *See Colvin*, 605 F.3d at 293. Further, as discussed below, the isolated occurrence of one instance of delayed mail did not interfere with his right to access the courts. *See id*. Thus, for all of these reasons, Plaintiff's allegations are insufficient to state a First Amendment legal mail violation claim.

### D.    Access to the Courts Claims

Plaintiff alleges that a motion for summary judgment in his previous civil rights case was filed on February 20, 2024, and he received it on April 12, 2024. (Am. Compl., ECF No. 8, PageID.39–40.) Plaintiff alleges that the mail was purposely delayed and these "practice[s] ha[ve] caused him harm and injury by Defendants J. Ice and co-worker[s] IBC Mailroom Staff in diminishing his ability to receive notice and file a proper response to the Motion for Summary Judgment filed by the MDOC defendants in [Plaintiff's prior civil rights case], which constructively denied [Plaintiff] his right to access the courts." (*Id*., PageID.41.)

11

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and show that the prison official or lack of legal materials have hindered his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Here, Plaintiff references "case no. 1:22-cv-00462." (Am. Compl., ECF No. 8, PageID.39.) Reviewing publicly available court dockets, it appears that Plaintiff's reference is to *Rice v. Unknown Bryce*, No. 1:22-cv-462 (W.D. Mich.), a civil rights action that Plaintiff previously filed in this Court. In that case, the magistrate judge's Report and Recommendation granted Defendants' motion for summary judgment based on the evidentiary record and considered Plaintiff's lack of response to the motion as an alternative basis for the dismissal of Plaintiff's claims. *Rice v. Unknown Bryce*, No. 1:22-cv-462, 2024 WL 3292618, at *2, *3 (W.D. Mich. April 1, 2024). The Court's Opinion and Order adopted the magistrate judge's Report and Recommendation and considered Plaintiff's objections, which were filed after Plaintiff learned of the motion for summary judgment, concluding: "Plaintiff provides no argument as to how his lack of notice regarding the motion [for summary judgment] would affect the Magistrate Judge's determination." *Rice v. Unknown Bryce*, No. 1:22-cv-462, 2024 WL 2827794 (W.D. Mich. June 4, 2024). Because

13

the prior civil rights suit was decided on the evidentiary record and the Court considered Plaintiff's late-filed objections to the motion for summary judgment, Plaintiff has failed to show an actual injury or lost remedy. *Lewis*, 518 U.S. at 349. Plaintiff has therefore failed to state an access to courts claim.

Accordingly, for the reasons set forth above, Plaintiff's access to the courts claims will be dismissed.

### E.    Fourteenth Amendment Grievance Procedure Claims

Plaintiff alleges that he filed a grievance on April 2, 2024, after discovering he did not receive his mail. (Am. Compl., ECF No. 8, PageID.39.) Plaintiff then claims that on April 24, 2024, he "received a [grievance] response from Defendant J. Ice . . . concerning the legal mail violations." (*Id*., PageID.40.) Plaintiff's complaint states that this grievance response was "in violation of [the MDOC's] Grievance Policy Directive." (*Id*.) Plaintiff was informed by a non-party that Defendant Ice was the General Office Assistant in the Mailroom. (*Id*., PageID.39.) Based on these allegations, the Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim regarding his use of the grievance procedure at IBC.

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x at 430; *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

14

The Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure). Further, "the denial of administrative grievances or the failure to act," does not create liability under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because Plaintiff's sole allegation is that Defendant Ice improperly responded to his grievance, and Plaintiff has no liberty interest in the grievance process, he was not deprived of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding his use of the grievance procedure at IBC will be dismissed for failure to state a claim.

### F.    Section 1983 Claims Regarding the Violation of Prison Policy

Plaintiff raises two issues with adherence to the MDOC's policies. First, Plaintiff claims that Defendant Ice's grievance response on April 24, 2024, was "in violation of [the MDOC's] Grievance Policy Directive." (Am. Compl., ECF No. 8, PageID.40.) Next, Plaintiff claims that the Defendants' practice of "not allowing / refusing attorneys . . . to leave with them, through staff, any copies of the prisoners' appeal paperwork [is] contrary to MDOC policy." (*Id*., PageID.41.) The Court construes these allegations to raise claims under § 1983 regarding the violations of prison policy.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Therefore, Plaintiff's assertions that Defendants violated the MDOC's or the prison's policies fail to state a claim under § 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's § 1983 claims regarding alleged violations of the prison's policies will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A Judgment consistent with this Opinion will be entered.

Dated:     July 10, 2026          /s/ Jane M. Beckering
                                  Jane M. Beckering
                                  United States District Judge

16